804 So.2d 783 (2001)
Susan Gail HESTER
v.
William Ewing HESTER, III.
No. 2001-CA-0380.
Court of Appeal of Louisiana, Fourth Circuit.
December 12, 2001.
*785 Robert C. Lowe, Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, Counsel for Plaintiff/Appellee.
Bennett Wolff, Wolff & Wolff, Metairie, LA, Counsel for Defendant/Appellant.
Court composed of Chief Judge WILLIAM H. BYRNES III, Judge MIRIAM G. WALTZER, and Judge DENNIS R. BAGNERIS, Sr.
BYRNES, Chief Judge.
Appellant, William Ewing Hester, III, appeals a judgment of August 30, 2000, denying his Amended Rule to Revoke or Terminate Alimony, his Rules to Reduce Support for Amanda Hester, and his Amended Rule to Reduce Child Support: condemning him to reimburse the appellee, Susan Gail Hester for tuition and related expenses of their son, William E. Hester, IV, in the amount of $21,912.00 in connection with his attendance at Christ School in 1998-1999; condemning him to pay 88% of all tuition and activity fees and other payments made by Susan Gail Hester for the 1999-2000 school year to St. Martin's Episcopal School for their son, William E. Hester, IV; and further condemning him to pay $1,000.00 in attorney's fees and $2,000.00[1] in sanctions related to his notice of deposition of Amanda Hester and in connection with Mrs. Hester's Motion to Quash and for Protective Order and his Opposition thereto.
Rather than rehash once again the tortured route this much litigated case has traveled through this Circuit, for the sake of brevity we refer the reader to the most relevant of the prior published decisions[2], all bearing the same title as the instant appeal: 93-1665 (La.App. 4 Cir. 9/15/94), 643 So.2d 216, writ granted, judgment of Court of Appeal reducing alimony reversed, judgment of trial court reinstated 94-2575 (La.12/19/94), 647 So.2d 1095, and writ denied 94-2549 (La.12/19/94), 648 So.2d 404; 95-1806 (La.App.1/13/96), 666 So.2d 737; 96-0189 (La.App. 4 Cir. 9/11/96), 680 So.2d 1232, writ denied 96-2452 (12/6/96), 684 So.2d 933 and 96-2468 (La.12/6/96), 684 So.2d 934; 97-1250 (La. *786 App. 4 Cir. 9/3/97), 699 So.2d 1099, writ denied 97-2746 (La.1/30/98), 709 So.2d 705; 97-2009 (La.App. 4 Cir.6/3/98), 715 So.2d 43, writ den. 98-1797 (La.9/18/98), 724 So.2d 759; 98-0854 (La.App. 4 Cir. 5/13/98), 715 So.2d 40, writ den. 98-1561 (La.9/18/98), 724 So.2d 764; 98-2220 (La. App. 4 Cir. 1/19/00), 752 So.2d 269, writ den. XXXX-XXXX (La.5/5/00), 756 So.2d 314.
There are two overarching conclusions to be gleaned from a study of the above line of prior reported decisions in this matter: (1) All of the Hester children have had special learning and/or behavioral problems that have placed an exceptional burden on Mrs. Hester, but which Mr. Hester has refused to share physically and emotionally and has shared financially only by virtue of court order; (2) Mr. Hester, an attorney, has waged a ceaseless legal war of attrition on his former spouse; and (3) the one time early on (before Mr. Hester's tactics became obvious) when this Court went along in part with one of Mr. Hester's rules to reduce the alimony awarded by the trial court, this Court was reversed by the Supreme Court. 93-1665 (La.App. 4 Cir. 9/15/94), 643 So.2d 216, writ granted, judgment of Court of Appeal reducing alimony reversed, judgment of trial court reinstated 94-2575 (La.12/19/94), 647 So.2d 1095, and writ denied 94-2549 (La.12/19/94), 648 So.2d 404.
Among Mr. Hester's arguments to this Court, two are paramount: (1) That Mrs. Hester has failed to show that she is in necessitous circumstances; and (2) that this Court's reference in a previous decision in this matter, 98-2220 (La.App. 4 Cir. 1/19/00), 752 So.2d 269, writ den. XXXX-XXXX (La.5/5/00), 756 So.2d 314, to a "substantial change in circumstances" standard for modifying a previous alimony award was in error.
In the context of the history of this case, these issues are intertwined. As to whether Mrs. Hester is in necessitous circumstances or in such circumstances as to entitle her to alimony regardless of the label applied to those circumstances, it is significant that the one time that this Court attempted to reverse the judgment of the trial court (and then only in part), concerning the award of alimony to Mrs. Hester, as we noted above, we were reversed by the Supreme Court in a decision that reinstated the award of the trial court. 93-1665 (La.App. 4 Cir. 9/15/94), 643 So.2d 216, writ granted, judgment of Court of Appeal reducing alimony reversed, judgment of trial court reinstated 94-2575 (La.12/19/94), 647 So.2d 1095, and writ denied 94-2549 (La.12/19/94), 648 So.2d 404. Therefore, we may safely proceed from the premise that the trial court, this Court and the Supreme Court have all been made very well aware of Mrs. Hester's circumstances. It is, therefore incumbent upon Mr. Hester to demonstrate to this Court that there has been a change of circumstance of such a nature as to warrant this Court overturning the carefully reasoned decision of the trial court which is the subject of this particular appeal.
Mrs. Hester cites Hammack v. Hammack, 99-2809 (La.App. 1 Cir. 12/22/00), 778 So.2d 70, writ denied XXXX-XXXX (La.5/25/01), 793 So.2d 166, in support of her contention that the law no longer requires her to prove that she is in "necessitous circumstances":
The term "necessitous circumstances" is a carry-over from cases which applied article 112 A(1) of the Louisiana Civil Code prior to the Spousal Support Act of 1997. That Article previously read, in pertinent part, as follows:
When a spouse has not been at fault and has not sufficient means for support, the court may allow that spouse, out of the property and earnings of the other spouse, permanent periodic *787 alimony which shall not exceed one-third of his or her income. [Emphasis original.]
The courts recognized the requirement under the old law to prove both freedom from fault and necessitous circumstances.
* * * *
Based on the prior statutory provisions, permanent alimony was awarded to a former spouse in need, and it is limited to an amount sufficient for the former spouse's maintenance. Since the claimant spouse had the burden of proving insufficient means of support, the next inquiry after the fault issue was whether the spouse claiming support has proved insufficient means for support. However, under present law, the claimant spouse has only to prove freedom from fault in order to qualify for periodic spousal support. The requirement that the claimant spouse also prove that she has not sufficient means for support is no longer included in the statutory basis for limiting support. Hence, the statutory basis for limiting support to a spouse in necessitous circumstances no longer exists.
What then is the court required to consider, under the present law, once it has determined that the claimant spouse is free from fault? The answer is in the present language of Civil Code Articles 111 and 112. Civil Code Article 111 indicates that the court may award support "based on the needs of that party and the ability of the other party to pay, in accordance with the following Articles."
Hammack, p. 5-6, 778 So.2d at 73-74.
However, as the law of this case, as established in a long line of final decisions, has previously determined that Mrs. Hester's circumstances are such as to entitle her to permanent alimony, the burden is on Mr. Hester to show what has changed since those decisions were rendered that would entitle him to have this Court reverse or modify the alimony awarded by the trial court, and how the trial court was manifestly erroneous or abused its broad discretion in failing to find those circumstances sufficient to mandate a modification in the alimony award.
Mr. Hester cites Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, for the proposition that a spouse attempting to modify a support order must only establish a change in circumstances, not a substantial change. He implies that all he need show is any change in circumstances. From this he then argues that because this Court in Hester v. Hester, 98-2220 (La. App. 4 Cir. 1/19/00), 752 So.2d 269, writ denied, XXXX-XXXX (La.5/5/00), 756 So.2d 314, stated that the "issue in this appeal is whether Mr. Hester established a substantial change in circumstances[3] to justify a reduction or revocation of alimony to his former wife," this Court's opinion in that case was in error.
First, we note that the Supreme Court denied writs in that Hester case[4] and that decision is final. Stogner notes that the requirement that there be a change in circumstances "is useful to prevent relitigation of the same issues and to protect the finality of judgments," i.e., the requirement is intended to prevent attempts, such as those of Mr. Hester in the instant case, to relitigate matters that have gone to final judgment. This appeal is not the proper vehicle for overturning this Court's January 19, 2000 Hester decision.
*788 More significantly, we find that Mr. Hester's references to this Court's use of the term "substantial" in our January 19, 2000 Hester decision as though that were the only basis of the decision represents a very superficial and distorted view of that decision. Regardless of the terminology employed by this Court in that decision, the real substance and meat of the decision can be found in the following language:
The record reveals that Mrs. Hester is a schoolteacher who has received only routine increases in her salary since the alimony was set in 1992. Mrs. Hester's job has not changed, and her salary has increased only been routine received by teachers. [Sic] We find that these increases do not constitute a change in circumstances under LSA-R.S. 9:311. We agree with the trial court that these increases, which have been just enough to offset inflation, do not constitute a change in circumstances sufficient to warrant a reduction or revocation of alimony. These increases in comparison to Mr. Hester's wealth and income as a successful Attorney are minimal.
Id., p. 8, 752 So.2d at 272.
This language quoted immediately above is entirely consistent with the Supreme Court's decision in Stogner:
"A change of circumstances is a change material to the well-being of the child and his or her support that has occurred since the rendering of the original award." BLAKESLY, LOUISIANA FAMILY LAW, § 16.16 AT 16-37 (Michie 1996).
* * * *
The application of that rule, as so many other related matters, concerning modification of child support clearly falls within the great discretion of the trial court. Accordingly, each case will rise or fall on the peculiar facts adduced and an appellate court will not disturb the trial court's decision in these matters, absent clear abuse of discretion. Rousseau, 685 So.2d at 683. [Emphasis added.]
Footnote "9" of Stogner, p. 12, 739 So.2d at p. 769, indicates that increases such as cost of living increases and similar increases related to inflation, such as those described by this Court as being the issue in our January 19, 2000 Hester decision, would not normally constitute sufficient basis for modifying a support award. Further, the reasons for judgment of the trial court for rejecting Mr. Hester's rule to terminate permanent alimony are also consistent with Stogner and do not include any reference to the term "substantial," Mr. Hester's chief cause for complaint:
Mr. Hester's last rules for a termination of alimony to Mrs. Hester were decided by this Court in 1997, with a written judgment filed in early 1998. Mr. Hester appealed that judgment, and it was upheld by the Fourth Circuit in January, 2000. Since 1997, Mrs. Hester's income has increased a small amount, as she received an annual cost-of-living raise from her employer, Trinity School. Mrs. Hester has been receiving these routine raises annually ever since 1992 when the original alimony award was made. Based on the evidence of Mrs. Hester's income, and the law of the case, the Court finds that Mr. Hester failed to prove a change of circumstances that would entitle him to a termination or even a reduction in support, because, as the Fourth Circuit observed only a few months ago in Hester v. Hester, # 98-CA-2220, 752 So.2d 269, Mrs. Hester's salary increases have "only been routine" and "do not constitute a change in circumstances sufficient to warrant a reduction or revocation of alimony." *789 Moreover, Mr. Hester's income is still substantial as the evidence shows.
There is no use of the term substantial in this language just quoted from the trial court's reasons for judgment. The trial court specifically found Mrs. Hester's "testimony credible and convincing as proof of her expenses." The trial court further found that Mrs. Hester's expenses were "necessary" and "have been proved by Mrs. Hester with credible evidence, so that she is still in need of alimony." The trial court noted that Mrs. Hester's expenses had increased since the time her permanent alimony had been fixed. Mr. Hester has offered no credible evidence that would permit this Court to find that the trial court committed manifest error or abused its discretion in maintaining the award of permanent alimony to Mrs. Hester.
Mr. Hester argues in brief that:
In December 1995, Amanda turned nineteen years old. In June 1998, Sarah Kathryn graduated from Ben Franklin High School. Therefore, at the June 9, 1998 hearing Mr. Hester was only obligated to support one minor child, William IV.
This disingenuous argument totally ignores the fact that Mr. Hester's brief acknowledges at the outset that Mr. Hester was ordered to pay $932.00 per month in support of Amanda in November of 1997 pursuant to LSA-C.C. art. 229[5], irrespective of the fact that Mr. Hester's brief also acknowledges that she turned nineteen in December of 1995. In other words, the trial court and this Court were cognizant of Amanda's majority at the time the child support was fixed. Mr. Hester has failed to show how there has been any material change in those facts.
Mr. Hester also complains about the failure of the trial court to reduce the in globo child support award now that only one of his three children, William IV, is still a minor. When the in globo award was originally fixed in 1988 all three children were young. Mrs. Hester argues that the expenses for William IV today at age sixteen are far greater than they were when he was only four years old in 1988 and his two siblings were also young. Mr. Hester's position is based more on the fact that two of his children are now majors rather than the production by him of credible evidence compelling the reduction of the child support; or any showing by him of how the trial judge may have been manifestly erroneous in her interpretation of the evidence; or how the trial judge may have abused her broad discretion in reaching her decision in this matter. A reduction in child support is not automatic each time one of several children reaches the age of majority, nor even when all minor children for whom support has been ordered reach the age of majority. State in the Interest of Lewis, 609 So.2d 918, 920 (La.App. 4 Cir.1992). The amount of child support remains the same even after the oldest child reaches majority until such time as the obligor moves the court for and is granted a judgment reducing the in globo amount. Id. More importantly, we recognize that the support requirements of fewer older children may exceed those of a greater number of younger children. This conclusion employs the same reasoning found in Hogan v. Hogan, 465 So.2d 73 (La.App. 5 Cir.1985), where the court, quoting from Grand v. Grand, 415 So.2d 431 (La.App. 1 Cir.1982), stated that:
It is probably safe to say that no two children have exactly the same financial *790 needs. There are a multitude of factors, which vary from child to child, such as age, emotional and physical health, and educational needs, which necessitate such a conclusion. Additionally, there are certain expenses which often remain the same despite the fact that one child has moved from the home. [Emphasis added.]
The Hogan court went on to make the equally relevant observation that:
In addition, children living with the mother are entitled to the same standard of living as if they resided with their father whenever the financial circumstances of the father permit.
Where the combined adjusted gross income of both parents exceeds $10,000.00 per month, as is true in the instant case, the court shall use its discretion in setting the amount of the basic child support obligation. LSA-R.S. 9:315.10; Bullock v. Bullock, 98-0263, p. 4 (La.App. 4 Cir. 8/19/98), 719 So.2d 113, 115. The court's discretion in that regard includes consideration of a child's standard of living, as well as the child's needs. Id. Children are entitled to the same standard of living that they would enjoy if they lived with their father if their father's financial circumstances are sufficient to permit this. Id. This Court reemphasized these precepts again later in the same opinion:
When setting the amount of child support to be paid by a parent, the court should strive to maintain the lifestyle of the child, when possible, while considering the child's reasonably proven expenses and the parent's ability to provide. Falterman v. Falterman, 97-192 (La.App. 3 Cir. 10/8/97), 702 So.2d 781. Furthermore, as stated earlier in this opinion, children are entitled to the same standard of living that they would enjoy if they lived with the non-custodial parent, if the non-custodial parent's financial circumstances are sufficient to permit this. [Citation omitted.]
Mr. Hester complains that it was "double dipping" to require him to pay housing expenses for William IV in New Orleans while he was away at boarding school. Implicit in Mr. Hester's position is the argument that a child who goes away to school does not need a house to come home to. Carried to its logical and absurd conclusion, Mr. Hester's argument would mean that a child who goes to school in the daytime does not need a house to live in during that timeonly when he comes home at night, as though dwelling places existed on such a basis. Because a child who goes away to school still needs a proper home to come home to, the trial court did not abuse its discretion in concluding that William IV's housing expenses did not cease while he was away at school and that Mr. Hester continued to have a responsibility for that expense during that time. As the trial court quite reasonably put it:
[E]ven though a few of Mrs. Hester's recurrent expenses for William, primarily food, had to be reduced while William was at Christ School, ... many of her other expenses, like telephone, transportation, gifts, and the like, were increased during the same time.
There is nothing inconsistent in requiring Mr. Hester to bear a proportion (88%) of his son William's expenses while at boarding school[6] while simultaneously maintaining the monthly child support payments he must make to Mrs. Hester along with the $1,500.00 monthly mortgage payment he was required to make in order to enable Mrs. Hester to retain the family *791 home for the benefit of her children, especially William.
Additionally we note that the record clearly establishes William's special educational needs requiring the special advantages offered by the boarding school as long as Mr. Hester's resources, the primary source of parental income, were sufficient to provide him with those advantages.
There is no manifest error in the trial court finding that in spite of the small increases in Mrs. Hester's income, it still remains only 12% of the total income for both parties. Nor is there any manifest error in the trial court's finding that Mr. Hester "failed to prove a change in William's circumstances, or his own financial condition to the extent that any decrease is necessary."
Most significantly, we cannot argue with the trial court's reasoning in rejecting the evidence Mr. Hester offered on this issue:
Any summary sheet of a child's expenses that omits medical and dental costs, insurance, cash expenditures, household maintenance, utilities, or food, is incomplete and not credible. Mr. Hester never testified under oath as to how he calculated those expenses, and the Court accepts Mrs. Hester's explanation that Mr. Hester only accepted certain expenses that had a child's name on it and rejected any cash expenditure.
This Court shares the concern expressed by the trial court regarding Mrs. Hester's legal expenses arising out of this litigation, an issue addressed in previous proceedings in this matter by the assessment of attorney fees and sanctions. However, the question of attorney's fees and sanctions are not before this Court in connection with this appeal.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Mr. Hester did not assign as error or offer any argument concerning the lower court award of attorney fees and sanctions. Accordingly, those issues will not be considered in this opinion.
[2] There are several other proceedings in this matter that shed no light on the instant appeal other than the fact that they bear on the sheer quantity of litigation that surrounds this case.
[3] Emphasis added.
[4] XXXX-XXXX (La.5/5/00), 756 So.2d 314
[5] Amanda's disabilities and the learning and other problems of her siblings creating special problems for those children have already been discussed in prior opinions
[6] Mrs. Hester acknowledges that William no longer goes away to school which obviates any future concerns Mr. Hester may have about "double dipping" on expenses.